### A08A0849. CSX TRANSPORTATION, INC. v. McDOWELL.
(670 SE2d 543)

PHIPPS, Judge.

Earnest McDowell brought an action pursuant to the Federal Employers' Liability Act (FELA) against CSX Transportation, Inc., alleging that he was injured as a result of occupational exposure to a chemical released from a train car. CSX filed a motion in limine to exclude the testimony of one of McDowell's expert witnesses as insufficient under OCGA § 24-9-67.1. CSX also filed a motion for summary judgment, arguing that without the expert's testimony, there was no evidence of causation.[1] The trial court denied CSX's motions, and CSX appeals. For reasons that follow, we affirm.

The record shows that on December 6, 2002, McDowell was working for CSX as a conductor on a train to Waycross. Along the way, the dispatcher informed the train crew of a report of a leaking train car and instructed McDowell to investigate. Accordingly, when the train made its next stop, McDowell got off the train and walked alongside it visually inspecting it for a leak as the train continued to travel slowly. The dispatcher called again and ordered the crew to stop the train and to move away from it. As McDowell quickly headed toward the engine to retrieve his personal belongings, he encountered a strong odor like that of "rotten eggs." McDowell deposed that, by the time he reached the engine, he felt "real bad," nauseated, and drowsy. Also, his eyes were "burning."

The train engineer summoned medical assistance for McDowell, who was taken to a Waycross hospital emergency room, where he was treated and released the same day. McDowell deposed that during the next few days, he continued to feel "bad" and received medical treatment in an emergency room in his community. In February 2003, the physician who had served as McDowell's primary doctor since 1999 diagnosed McDowell as having hepatitis induced by exposure to a chemical.

McDowell sued CSX, alleging that the December 2002 train leakage exposed him to a chemical that caused his hepatitis. After deposing McDowell's primary physician, CSX filed the motions to exclude evidence and for summary judgment. CSX relied upon the doctor's deposition testimony that he did not know the contents of the tank car and therefore did not know the effects of such chemical(s) upon the liver. CSX cited its admission that the leaking tank had contained alpha-Pinene and claimed that there was no scientific

---

[1] See *Shiver v. Ga. & Fla. Railnet*, 287 Ga. App. 828, 830 (2) (652 SE2d 819) (2007) (to prevail on a FELA claim, a plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation).

support that alpha-Pinene was capable of causing hepatitis. CSX argued that the doctor's opinion was not a product of reliable principles as contemplated by OCGA § 24-9-67.1, but based merely upon temporal proximity between McDowell's chemical exposure and the onset of his symptoms; and that the doctor therefore should not be permitted to offer testimony regarding causation at trial.

Opposing the summary judgment motion, McDowell asserted that CSX "had not been forthcoming in revealing the contents of the tank car" and had further mischaracterized his claim. McDowell pointed out that after CSX deposed his treating doctor, he (McDowell) deposed the project manager for the environmental company hired by CSX to inspect the leaking tank car. Citing the project manager's testimony that hydrogen sulfide had leaked from the tank car, McDowell clarified that his claim was that the exposure to the hydrogen sulfide (as opposed to alpha-Penine) had caused his hepatitis. Thus, as evidentiary support for causation, McDowell cited the project manager's testimony, along with other parts of his doctor's deposition, and affidavits of his doctor and a toxicologist. Having reviewed all the evidence of record, the trial court denied CSX's motions.

1. CSX contests the denial of its motion in limine to exclude the testimony of McDowell's treating physician as inadmissible under OCGA § 24-9-67.1 (b), which states that expert testimony is admissible if:

> (1) [t]he testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial; (2) [t]he testimony is the product of reliable principles and methods; and (3) [t]he witness has applied the principles and methods reliably to the facts of the case.

"A trial court has broad discretion in determining whether to admit expert testimony, and we will not reverse its ruling absent an abuse of discretion."[2]

(a) CSX contends that the trial court abused its discretion, asserting that the trial court failed to expressly demonstrate that it carried out its role as gatekeeper. CSX asserts that the court's order does not include specific findings and that the record does not contain certain discussion that addresses *Daubert v. Merrell Dow Pharmaceuticals*[3] so as to affirmatively show that the court carried

---

[2] *Long v. Natarajan*, 291 Ga. App. 814, 817 (2) (b) (662 SE2d 876) (2008) (footnote omitted).

[3] 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993); see OCGA § 24-9-67.1 (f) (in applying

out its role as gatekeeper.[4] But the Georgia General Assembly did not include any such requirement within OCGA § 24-9-67.1; CSX cites no binding authority that a trial court must nevertheless do so;[5] and we decline to impose such a requirement. Generally, a trial court will be presumed to have performed its duties.[6] Accordingly, we will presume that, when presented with a motion to exclude expert testimony as inadmissible under OCGA § 24-9-67.1, a trial court engages in the contemplated analysis in ruling thereupon.

Moreover, CSX acknowledges in its brief that the trial court conducted a hearing on its motion to exclude the expert testimony. Yet CSX failed to cause a transcript of the hearing to be made a part of the record. At any rate, in this case, the trial court's order adequately demonstrates that the trial court performed its role as gatekeeper.

(b) CSX maintains that McDowell's treating physician's testimony was based merely upon a temporal relationship between McDowell's exposure to the chemical and the onset of his symptoms, as opposed to reliable scientific methodology. To support this argument, CSX has focused upon testimony given by the doctor when it deposed him, wherein the doctor readily admitted that he did not know at that time the contents of the leaking tank car, did not know the chemical(s) contained therein, and did not know whether such chemicals could cause hepatitis. However, given the entirety of the evidentiary record, CSX has failed to show that the trial court abused its discretion in denying its motion in limine to exclude the doctor's testimony.

McDowell's doctor, who specialized in internal medicine, deposed that he had diagnosed McDowell with chemical hepatitis after having conducted a differential diagnosis. The doctor recounted that he had performed the differential diagnosis by reviewing McDowell's

---

OCGA § 24-9-67.1, Georgia's courts "may" draw from opinions of certain cases, including *Daubert*, supra); *Mason v. Home Depot U.S.A.*, 283 Ga. 271, 277 (3) (658 SE2d 603) (2008) ("permissive suggestion" in OCGA § 24-9-67.1 (f) that the courts consider federal interpretations of the cases on which the federal rules and OCGA § 24-9-67.1 were based contains no words of command).

[4] See *Cotten v. Phillips*, 280 Ga. App. 280, 286 (633 SE2d 655) (2006) (constant in *Daubert*, supra, and cases applying standards set forth therein is theme that trial court is the gatekeeper of expert testimony).

[5] CSX cites *Dodge v. Cotter Corp.*, 328 F3d 1212, 1223 (10th Cir. 2003) (without specific findings or discussion on the record, it is impossible on appeal to determine whether the district court carefully and meticulously reviewed the proffered scientific evidence or simply made an off-the-cuff decision to admit the expert testimony, and in absence of findings, reviewing court will conclude that trial court abused its discretion in admitting such testimony). But see *Mason*, supra (interpreting statutory language of OCGA § 24-9-67.1 (f)).

[6] See *Byelick v. Michel Herbelin USA*, 275 Ga. 505, 507 (3) (570 SE2d 307) (2002); see generally *Youngblood v. State*, 253 Ga. App. 327 (1) (558 SE2d 854) (2002) (appellate court presumes that the trial court performed its official duties in accordance with the law).

medical history; testing for and excluding other causes of hepatitis, such as various viruses and diseases; and taking into consideration McDowell's report to him about a work incident that had exposed him to a chemical the previous December.

After CSX deposed the doctor, McDowell took the deposition of the project manager for the environmental company that CSX had hired to investigate the train with the leaking car. The project manager testified that on December 6, 2002, in examining the train, he detected an odor and soon discovered that one of its tank cars showed indications that liquid material had spilled from its manway. The outer gasket of the manway was extruding and crimped under the manway. The project manager placed a combustible/multi-gas meter near the manway, and the meter registered a reading of 135 parts per million of hydrogen sulfide. The project manager determined that the leaking car contained hydrogen sulfide.

After deposing the project manager, McDowell obtained the affidavit of a toxicologist who had earned a Ph.D. in Medicinal Chemistry and who had over 30 years of experience as a forensic toxicologist with the Georgia Bureau of Investigation Division of Forensic Sciences. The toxicologist opined that the chemical in the leaking tank car could not have been alpha-Pinene as claimed by CSX. According to the toxicologist, alpha-Pinene contains no sulfur in its chemical makeup and therefore "cannot be detected on a hydrogen-sulfide gas meter"; alpha-Pinene does not smell like rotten eggs, but hydrogen sulfide bears the "distinctive odor of rotten eggs"; and hydrogen sulfide is "highly toxic." Considering these factors, together with the gas-meter reading taken by the project manager of the environmental company hired by CSX, the toxicologist opined that the chemical to which McDowell had been exposed was hydrogen sulfide and not alpha-Penine.

McDowell then acquired affidavits of his treating physician, wherein the doctor stated that he had reviewed the testimony of the project manager and the toxicologist. The doctor opined to a reasonable degree of medical certainty that McDowell's exposure to a substance measuring at 135 parts per million of hydrogen sulfide had caused McDowell's hepatitis. The doctor averred that his opinion was not based solely upon temporal proximity, but also upon his education, training, and experience, which included his knowledge of bodily physiology, the function of the human liver, the fact that hydrogen sulfide is taken up and metabolized by the liver, the effect of toxins such as hydrogen sulfide on the liver, his knowledge of McDowell's liver functioning tests prior to the exposure, and his knowledge of McDowell's liver functioning test following his exposure. The doctor also averred that McDowell's exposure to the

hydrogen sulfide was physiologically and medically consistent with his initial diagnosis of McDowell having chemical hepatitis.

This record authorized the trial court to reject CSX's argument that the doctor's testimony was based merely upon a temporal relationship between McDowell's exposure to the chemical and the onset of his symptoms. Considering the doctor's testimony as a whole and viewed in light of the competent evidence of record, we find no abuse of discretion by the trial court in denying CSX's motion in limine to exclude the doctor's testimony as inadmissible under OCGA § 24-9-67.1 (b).[7]

2. CSX contends that the trial court erred by denying its motion for summary judgment for lack of evidence of causation, arguing that the doctor's and the toxicologist's testimony should have been excluded.[8]

Regarding the doctor's testimony, our holding in Division 1 (b) renders this contention moot.[9] Regarding the toxicologist's testimony, CSX concedes that it made no motion in limine to exclude such testimony. Viewing the competent evidence in the light most favorable to McDowell as the nonmoving party, we conclude that the denial of CSX's motion for summary judgment based upon causation was proper.[10]

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED NOVEMBER 26, 2008.

*Casey & Gilson, James E. Gilson*, for appellant.

---

[7] See generally *Canas v. Al-Jabi*, 282 Ga. App. 764, 792 (3) (a) (639 SE2d 494) (2006), rev'd on other grounds, *Kaminer v. Canas*, 282 Ga. 830, 838 (4) (653 SE2d 691) (2007); see further *Shiver*, supra at 829 (recognizing "differential diagnosis" as a method by which a plaintiff in a chemical exposure case may show specific causation in a manner that satisfies the *Daubert* standard).

[8] *Shiver*, supra (in a FELA case involving allegations of injury due to chemical exposure, the plaintiff must show specific causation through expert testimony).

[9] Supra.

[10] CSX points out that the trial court's denial of summary judgment was based, in part, upon the toxicologist's opinion that McDowell's hepatitis was caused by his December 2002 exposure to hydrogen sulfide. CSX argues that the toxicologist could not render such an opinion because he was not a medical doctor. "Had [CSX] desired that the trial court exclude this [opinion] from consideration as not meeting the standards of OCGA § 24-9-67.1, then [CSX] should have made an appropriate objection or motion under OCGA § 24-9-67.1 (d) below." *Rodrigues v. Ga.-Pacific Corp.*, 290 Ga. App. 442, 448 (661 SE2d 141) (2008) (on motion for reconsideration). At any rate, even without considering this part of the toxicologist's testimony, there was sufficient competent evidence of causation such that the denial of CSX's motion for summary judgment was proper.

*Harp & Callier, John A. Harp, Jefferson C. Callier, Douglas L. Gibson*, for appellee.