**WHOLE COURT**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 28, 2014**

# In the Court of Appeals of Georgia

A13A1722. LAVELLE et al. v. LABORATORY CORPORATION
OF AMERICA.

MCFADDEN, Judge.

Plaintiff Timothy Lavelle, individually and as the surviving spouse and executor of the estate of Cathleen Lavelle, brought this action against a physician, a medical practice, appellee Laboratory Corporation of America ("LabCorp"), and John Does 1-10, seeking damages for alleged ordinary and professional negligence in failing to diagnose and treat Cathleen Lavelle's cervical cancer in a timely fashion. This appeal concerns only the single allegation against LabCorp that its employee was negligent in failing to detect abnormal cells on a Papanicolaou ("Pap") smear test slide submitted to it in April 2006. Lavelle appeals three rulings of the trial court: (1) the denial of a motion to compel further deposition of a witness; (2) the grant of a

motion excluding the testimony of an expert witness; and (3) the grant of partial summary judgment in favor of LabCorp on the issue of breach of the standard of care. For the reasons stated below, we affirm the denial of the motion to compel but vacate the grant of the motion to exclude the expert testimony and the grant of partial summary judgment, and we remand the case to the trial court for further proceedings not inconsistent with this opinion.

The parties have engaged in extensive discovery and have presented over 4,000 pages of record to this court, including numerous depositions of fact and expert witnesses. During the discovery period, Lavelle filed a motion to compel and for sanctions regarding the testimony of a LabCorp employee, which was denied. On September 7, 2011, the trial court entered a consent "Scheduling Order" setting dates for, among other things, the disclosure and deposition of expert witnesses and the filing of *Daubert* motions, see *Daubert v. Merrill Dow Pharmaceuticals*, 305 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993), and motions for summary judgment. LabCorp filed timely motions to exclude the testimony of three expert witnesses and for summary judgment. The trial court granted those motions in part, and this appeal followed.

1. *Motion to compel.*

Lavelle first enumerates as error the denial of his motion to compel. In 2011, Lavelle deposed the cytotechnologist ("cytotech") at LabCorp who, in 2006, performed the initial review of the Pap smear test slide at issue here. At that time, the cytotech reviewed approximately 140 slides per day, using a computer-guided microscope that selected 22 sample fields of view for her examination. She had no recollection of having reviewed the particular slide at issue here. During her deposition, she was shown photomicrographs of the slide and asked if, in her opinion, the cells presented any abnormalities. Counsel for LabCorp objected and instructed the witness not to answer the question. The witness testified that she did not screen slides by examining photomicrographs, and that the photomicrographs presented a different appearance from the slides she normally reviewed. In addition, as Lavelle acknowledged, there is no way to tell if the photomicrographs show the same cells that the computer-generated views displayed in 2006. Moreover, the witness explained, she would look at the slide today "with different eyes . . . [b]ecause you look at things with bias hindsight. You look at things – you look at things differently that way."

The trial court denied Lavelle's motion to compel, finding that this line of questioning was not discoverable or likely to lead to the discovery of admissible

evidence because no proper foundation was established to show that the photomicrographs were representative of what the witness saw at the time, because she was a fact witness being asked for an expert opinion, and because hindsight bias affected what "she would see now, looking at something she didn't look at back in 2006."

"The trial court's discretion in dealing with discovery matters is very broad, and this Court has stated on numerous occasions that it will not interfere with the exercise of that discretion absent a clear abuse." *Powers v. Southern Family Markets*, 320 Ga. App. 478, 482 (3) (740 SE2d 214) (2013) (citations, punctuation and footnote omitted). Given the applicable standard and the significant differences between the witness's original review of the slide and the review which Lavelle sought to elicit on her deposition, as well as the witness's expressed hindsight bias given her knowledge of the outcome, we cannot say that the trial court abused its broad discretion in limiting the examination of the witness. We therefore affirm the ruling denying the motion to compel.

2. *Exclusion of expert testimony.*

Lavelle next appeals the trial court's exclusion, in part, of the testimony of expert witness Dorothy Rosenthal, M. D., a staff pathologist and professor of

pathology oncology at Johns Hopkins with experience in the fields of cytotechnology and interpretive slides. She opined that the cytotech's initial review of the slide in this case breached the applicable standard of care. In both her deposition and a hearing on LabCorp's *Daubert* motion, Dr. Rosenthal testified that she formed her opinion about a breach of the applicable standard of care from her personal, focused reviews of the slide. She described her experience and the methodology she used in conducting focused reviews, and she opined that the abnormalities she observed in the focused reviews of the slide should have been recognized and identified as such by any certified cytotech. In her deposition, Dr. Rosenthal described this case as a "blatant miss" and testified that another procedure referred to as a blinded review was not necessary to form an opinion in such a case. Nevertheless, at both her deposition and the hearing she testified that the results of two blinded reviews in this case corroborated her already-formed opinion that the applicable standard of care had been breached.

After the hearing, the trial court held that Dr. Rosenthal could give expert testimony on several topics, including the applicable standard of care for a cytotech, the abnormalities that Dr. Rosenthal observed on the Pap smear slide, and the requirement that a cytotech refer a slide with such abnormalities to a pathologist. But

5

the trial court held that Dr. Rosenthal could not give an opinion about whether LabCorp's employee breached the applicable standard of care in this case. In her written order on the *Daubert* motion, the trial court excluded evidence of the two blinded reviews on the ground that they did not satisfy the reliability requirements of former OCGA § 24-9-67.1 and *Daubert*. The trial court also ruled in the written order that Dr. Rosenthal could not give an expert opinion on a breach of the applicable standard of care because the blinded reviews were the "*only* bases for that opinion." (Emphasis supplied.) Nowhere in the written order did the trial court refer to the focused reviews upon which Dr. Rosenthal testified that she had based her opinion.

The trial court's written order incorporated by reference the hearing transcript, and at the hearing the trial court made some additional oral rulings that were not included in the written order. Again, none of those rulings expressly referred to the focused reviews or addressed the reliability of that methodology. Instead, the trial court stated that blinded reviews were the only methodology that the expert could use to reach an opinion on a breach of the applicable standard of care. The trial court cited standards promulgated by professional associations in support of this ruling.

Former OCGA § 24-9-67.1 (b), which applied at the time of the trial court's ruling in this case, provides:

6

If scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case.

Our Supreme Court has enunciated the standards under which a trial court reviews the testimony of an expert witness for admission under former OCGA § 24-9-67.1:

In determining the admissibility of expert testimony, the trial court acts as a gatekeeper, assessing both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony. . . . Reliability is examined through consideration of many factors, including whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training. There are many different kinds of experts and many different kinds of expertise, and it follows that the test of reliability is a flexible one, the specific factors neither necessarily nor exclusively applying to all experts in every case.

7

*HNTB Ga. v. Hamilton-King*, 287 Ga. 641, 642-673 (1) (697 SE2d 770) (2010) (citations and punctuation omitted). We will not disturb the trial court's determination absent a manifest abuse of discretion. Id. at 642 (1).

In excluding Dr. Rosenthal's opinion, the trial court abused her discretion in two ways. First, the trial court erred to the extent she held that the only acceptable methodology for reaching an opinion about whether a cytotech breached the applicable standard of care was the blinded review methodology promoted and promulgated by a professional association representing cytotechs. We are aware of no legal authority – legislative or judicial – that directs the specific methodology an expert must use to establish a breach of the standard of care in a professional malpractice case. The objective of the gatekeeping requirement set forth in *Daubert* and in former OCGA § 24-9-67.1 is not to establish or enforce a particular methodology. It is "to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U. S. 137, 152 (II) (B) (119 SCt 1167, 143 LEd2d 238) (1999). See generally former OCGA § 24-9-67.1 (f) (explaining that Georgia courts may draw

from federal cases, including *Daubert* and *Kumho Tire Co.*, to interpret and apply that Code section). Accordingly, in another case involving opinion testimony from Dr. Rosenthal, the United States District Court for the Northern District of Georgia stressed that in excluding her testimony it was *not* holding that the methodology set forth in the professional association guidelines was "the only methodology that would allow an expert to offer an opinion on the standard of care for a cytotechnologist in reviewing Pap smear slides." *Adams v. Lab. Corp. of Amer.*, 2012 U. S. Dist. LEXIS 13582 at *48-49 (6) . 11 (N. D. Ga. 2012).

Dr. Rosenthal did not testify that blinded reviews were the only means by which one could form a reliable opinion regarding a breach of the applicable standard of care. To the contrary, as mentioned above, Dr. Rosenthal consistently testified that she based her opinion on that issue on her focused reviews, and that the blinded reviews merely corroborated that opinion.

Dr. Rosenthal did describe certain specific requirements in "asserting a violation of the standard of care" that were inapplicable to focused reviews. But that testimony pertained only to blinded reviews. It occurred during a discussion about the

9

requirements and the professional association guidelines for a blinded review.[1] The trial court did not treat that testimony as an admission related to the focused reviews. In her oral ruling, the trial court described the testimony as an "admission . . . that [Dr. Rosenthal's] blinded review cannot meet the requirements of *Daubert* for determining the guidelines."

The trial court also abused her discretion by not conducting a *Daubert* analysis of the methodology that Dr. Rosenthal *did* employ in reaching her opinion – the focused reviews. The trial court neither mentions the focused reviews in the written or oral rulings, nor indicates that she considered whether, apart from the blinded reviews, the focused reviews could form the basis for a reliable opinion that met the requirements of former OCGA § 24-9-67.1 (b). While the trial court was not required to make specific findings of fact relating to these statutory requirements, see *CSX Transp. v. McDowell*, 294 Ga. App. 871, 872-873 (1) (a) (670 SE2d 543) (2008), the trial court's rulings did not "adequately demonstrate that the trial court performed its

---

[1] Dr. Rosenthal testified that "the slides have to be assessed by qualified reviewers without knowledge of the clinical background in an environment that simulates normal screening, subjected to an unbiased screening process[ ], also with a substantial number of normal and abnormal gynecologic, cytologist sampling."

role as gatekeeper," id. at 873 (1) (a), with regard to the reliability of an opinion based upon focused reviews rather than blinded reviews.

For this reason, we vacate the ruling excluding Dr. Rosenthal's opinion and remand the case for the trial court to analyze the relevancy and reliability of her proffered opinion based upon focused reviews. See generally *An v. Active Pest Control South*, 313 Ga. App. 110, 114-115 (720 SE2d 222) (2011) (explaining that appellate courts generally should not decide in the first instance questions of the admissibility of expert testimony, the resolution of which often requires fact finding).

3. *Motion for partial summary judgment.*

In light of our decision to vacate the ruling excluding Dr. Rosenthal's opinion on a breach of the applicable standard of care and to remand the case for further consideration on that issue, we also vacate the order granting partial summary judgment to LabCorp as that ruling was based in part on the exclusion of Dr. Rosenthal's opinion testimony.

*Judgment affirmed in part, vacated in part, and case remanded. Phipps, C.J., Barnes, P.J., Ellington, P.J., and Doyle, P.J. concur; Boggs and Branch, JJ, concur in part and dissent in part.*

11

A13A1722. LAVELLE et al. v. LABORATORY CORPORATION

OF AMERICA.

Boggs, Judge, dissenting in part.

Because the majority has failed to adhere to the appropriate standard of review on appeal, I respectfully dissent to Divisions 2 and 3.

"The determination of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion." (Citation and punctuation omitted.) *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. 641, 642 (1) (697 SE2d 770) (2010). And the "trial court is granted the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."(Citation and punctuation omitted.) *Anderson v. Atlanta Gas Light Co.*, 324 Ga. App. 801, 808 (1) (a) n.15 (751 SE2d 589) (2013).

Here, the trial court noted, and Dr. Rosenthal testified, that review of a Pap smear is "one of the most fragile parts of the pathology discipline" and that it is a "screening test, not a diagnostic procedure." Because interpretation of the slide is

12

"inexact science" and "a subjective exercise," two qualified experts may disagree in their interpretation of a particular slide ("interobserver variability"), and even the same expert may interpret the same slide differently at different times ("intraobserver variability"). In addition, because of the nature of the screening process, a cytotech as an "initial reviewer" has different training from a pathologist such as Dr. Rosenthal. A cytotech reviews a large number of slides per day, and Dr. Rosenthal agreed that, in contrast to her typical workload, which has already been selected as "high risk," the "overwhelming majority, in fact, almost all" of the slides viewed by a cytotech are normal. Finally, in this case, a computer system applied an algorithm to select 22 restricted fields of view from the slide for the cytotech to examine through the microscope.

Testimony also was presented that reviews of Pap slides are subject to what is termed "hindsight bias." Dr. Rosenthal acknowledged that Lavelle's slide was brought to her by her attorney, and that "any time an attorney calls you up and says I have a pap slide, you know something bad has happened." She testified that she was asked "to just verify . . . . that I agreed there may be something wrong on the slides." She testified that her knowledge that "something was wrong" caused her to "look at

13

it differently from the way I would look at a pap coming through my regular caseload, absolutely." In response to questioning from the trial court, Dr. Rosenthal acknowledged that her "first opinion was not obtained by putting [her]self in the shoes of what a cytotech would have done;" that she already knew that there was litigation and that she had already looked at the entire slide rather than a computer-guided segment. While Dr. Rosenthal testified that the slide contained abnormalities that should have been recognized by a cytotech, she formed that opinion in the context of her hindsight knowledge.

From this testimony, the trial court was within its discretion to conclude that the opinion of a physician pathologist interpreting a single slide which she knows to be abnormal is irrelevant in determining a breach of the standard of care on the part of a non-physician cytotechnologist engaging in an initial screening review of numerous slides, almost all of which will be normal.[2]

---

[2]While the trial court did not explicitly rule in its final order that Dr. Rosenthal's focused reviews could not form the basis for an opinion on the breach of the standard of care, it did rule on the issue. After the trial court's oral rulings that it would not consider the focused reviews, Lavelle filed a "Motion for Reconsideration of the Trial Court's Ruling on the Necessity for 'Blinded Reviews'" in which he noted each of the trial court's rulings. The trial court expressly denied this motion for reconsideration in its final order.

Moreover, Dr. Rosenthal acknowledged that even in the absence of any breach of the standard of care, "good" testing laboratories "have an error rate in the neighborhood of five to ten percent." She testified that the College of American Pathologists ("CAP") and the American Society of Cytopathology ("ASCP") have developed extensive guidelines for the retrospective evaluation of Pap smears in actual or potential litigation. She stated that the two sets of guidelines were "basically the same," but "[t]he ASC guidelines were really more – I was trying to comply with those more than anything else." Questioned by the trial court, Dr. Rosenthal agreed that "asserting a violation of the standard of care, the slides have to be assessed by qualified reviewers without knowledge of the clinical background in an environment that simulates normal screening, subjected to an unbiased screening process[], also with a substantial number of normal and abnormal gynecologic, cytologist sampling."[3] The majority essentially disagrees with the expert's *uncontradicted* testimony in this case that her own "focused reviews" are therefore by her own admission inadequate to establish a breach of the standard of

_____

[3]This testimony forecloses the majority's contention that the trial court was improper in holding that, under the evidence presented in *this* case, the blinded reviews were the only proper foundation for the expert's opinion.

15

care. This does not adhere to the standard of review for the trial court's assessment of expert testimony under *Daubert*.

The majority also asserts that the trial court should have included findings with regard to each element of a *Daubert* analysis regarding the focused reviews, even though the expert herself admitted that those reviews were inadequate. But we have already rejected that contention in *CSX Transp. v. McDowell*, 294 Ga. App. 871, 872-873 (1) (a) (670 SE2d 543) (2008), in which the appellant asserted:

> that the court's order does not include specific findings and that the record does not contain certain discussion that addresses *Daubert v. Merrell Dow Pharmaceuticals* so as to affirmatively show that the court carried out its role as gatekeeper. But the Georgia General Assembly did not include any such requirement within OCGA § 24-9-67.1; [appellant] cites no binding authority that a trial court must nevertheless do so; and we decline to impose such a requirement. Generally, a trial court will be presumed to have performed its duties. Accordingly, we will presume that, when presented with a motion to exclude expert testimony as
>
> inadmissible under OCGA § 24-9-67.1, a trial court engages in the contemplated analysis in ruling thereupon.

(Citations and footnotes omitted.) Id. A remand for mere clarification of the trial court's well-supported decision is a pointless exercise and a waste of scarce judicial resources.

The facts and circumstances of this case are unique, and this expert's testimony was shaped in large part by the procedural posture of the case, including discovery deadlines and the plaintiff's handling of his expert witnesses. The majority apparently feels that the trial court's ruling here somehow forecloses any other "acceptable methodology" for showing such a breach, but we cannot speculate as to what the plaintiff *could* have shown, or *might* have shown, through the use of different experts or different testimony. Like the district court in *Adams v. Laboratory Corp.*, 2012 U. S. Dist. LEXIS 13582 (N. D. Ga. 2012), the trial court here was not making any general pronouncement on "the only acceptable methodology," but simply ruling on the evidence before it, including the expert's own testimony.[4] The trial court gave the parties ample opportunity to brief the very issues that the majority complains of, and the plaintiff failed to provide that testimony.

---

[4]Unlike the majority, we do not rely upon *Adams* in support of our decision here, even though the district court excluded the same expert witness' testimony on the same issue, because the procedural posture, facts, and testimony are necessarily different.

17

Moreover, in contrast to this court, the trial court had the benefit not only of the witness' lengthy deposition, numerous exhibits including scientific publications, and the detailed briefs of the parties, but also a lengthy hearing at which the expert witness testified and was questioned by the trial court. The trial court carefully reviewed the entire record and entered a lengthy, detailed, comprehensive order excluding part of the expert's testimony, pointing out specific evidence in detail, including impermissible hearsay, that demonstrated a lack of reliability of the expert's methodology. The trial court's decision to exclude this testimony was not a manifest abuse of its discretion.

> For the same reasons, I dissent to Division 3 of the majority.

> It is a legal inference or assumption that physicians, nurses, and other medical professionals exercise due care and skill in their treatment of a patient based on their education, training, and experience. To overcome the presumption in the typical case, the injured patient must present evidence from expert medical witnesses that the defendants did not exercise due care and skill in performing their services.

(Citations and footnote omitted.) *Beach v. Lipham*, 276 Ga. 302, 304 (1) (578 SE2d 402) (2003). In *Anderson*, supra, 324 Ga. App. at 814-815 (2), we faced a very similar issue: when the plaintiff's expert testimony was excluded, no evidence remained that

the defendant "violated any applicable regulations or standards of care," and the trial court correctly ruled that without admissible expert testimony the plaintiffs could not prevail. Id. at 815 (2). Here, all expert testimony with respect to the breach of a cytotech's standard of care was properly excluded. LabCorp therefore was entitled to summary judgment as a matter of law. Id.; *Vaughan v. WellStar Health Sys.*, 304 Ga. App. 596, 602 (4) (696 SE2d 506) (2010).

I therefore respectfully dissent.

I am authorized to state that Judge Branch joins in this dissent.