**FIFTH DIVISION
MCFADDEN, P. J.,
RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 25, 2019**

# In the Court of Appeals of Georgia

A18A1842. KERSHAW et al. v. PRINCETON PROPERTIES MANAGEMENT, INC. et al.

MARKLE, Judge.

Mr. and Mrs. James and Delores Kershaw, plaintiffs in the civil action below, appeal from the trial court's grant of summary judgment to the defendants. The Kershaws argue that the trial court erred in finding that they failed to submit sufficient expert medical evidence to establish that negligence by the defendants caused the Kershaws' injuries. Because we conclude that the trial court must exercise its role as gatekeeper to determine the admissibility of expert testimony under OCGA § 24-7-702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (113 SCt 2786, 125 LE2d 469) (1993), and the trial court did not do so in this case, we vacate the trial court's order and remand the case for further proceedings.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." OCGA § 9-11-56 (c). Our review of a trial court's ruling on a motion for summary judgment is de novo, and we review the evidence, and all reasonable inferences, in the light most favorable to the nonmovant. See *Green v. Raw Deal, Inc.*, 290 Ga. App. 464, 465 (659 SE2d 856) (2008).

So viewed, the evidence shows that Mr. and Mrs. Kershaw rented an apartment in the Highland Lakes Apartments complex from May 2012 to June 2015. Mrs. Kershaw was diagnosed with COPD in November 2011, and the Kershaws believe that mold in the apartment exacerbated Mrs. Kershaw's condition. As evidence of mold in the apartment, the Kershaws testified that they noticed rust-like stains on the air conditioner vents and moisture damage near the water heater, and the stains and moisture reappeared after cleaning. The apartment also smelled bad, and the Kershaws sometimes burned incense to cover the smell. In addition, the Kershaws hired Healthy Air to perform a mold test and the test showed that the apartment had very high toxic mold levels.

As evidence of her medical condition, Mrs. Kershaw testified that she never needed medication for breathing issues until she lived in Highland Lakes. Even after

she moved out of the apartment, Mrs. Kershaw continued to experience a weakened immune system. Prednisone and Z-Packs help her symptoms and her doctors have told her that mold exposure can cause health issues. Mr. Kershaw testified that his health was also affected by the mold at Highland Lakes. He has experienced a loss of memory, chronic phlegm in his throat, an overactive bladder, and headaches.

Dr. Vosudeh Pai, Mrs. Kershaw's treating physician, testified in a deposition as an expert witness for the Kershaws. He stated that, as a general principle, mold exposure can exacerbate respiratory symptoms and pulmonary conditions. Dr. Pai did not order any lab testing to determine if Mrs. Kershaw had been exposed to an unsafe level of mold, or to determine if she is allergic to any type of mold. He acknowledged that mold spores are present in "background levels" in outdoor air, and he could not identify how much greater exposure Mrs. Kershaw had by virtue of the indoor air compared to the outdoor air. Dr. Pai also acknowledged that inhalation of incense smoke could aggravate Mrs. Kershaw's condition.

Dr. Pai explained that COPD is a progressive condition that causes breathing difficulties and wheezing. In his view, Mrs. Kershaw's condition was caused by her years of cigarette smoking and was "[d]efinitely not" caused by mold exposure. Dr. Pai looked through medical records of Mrs. Kershaw's visits to various emergency

3

rooms while she was renting the Highland Lakes apartment, when she presented with breathing difficulties. He testified that several of those flare ups may have been triggered by things like seasonal pollen in the air, exposure to someone who was sick, or exposure to cigarette smoke (either because she was smoking herself or because she had been near someone who was smoking). Dr. Pai further testified that several of the flare ups appeared to have been triggered during a time when Mrs. Kershaw was away from her Highland Lakes apartment. Additionally, he stated that the frequency of flare ups reported by Mrs. Kershaw were typical for a patient with COPD. Ultimately, as of Mrs. Kershaw's most recent visit in May 2017, Dr. Pai did not notice any worsening of her condition. He described her pulmonary function between 2012 to 2016 as "fairly stable." Based on medical records and clinical notes that were created contemporaneously to that time period, Mrs. Krenshaw's flare ups did not appear to have become worse, more severe, or more frequent during the time she lived at Highland Lakes.

Nonetheless, Dr. Pai testified that he was able to state with a reasonable degree of medical certainty that Mrs. Kershaw's COPD was exacerbated by her exposure to mold at the Highland Lakes apartment. He explained that this opinion was based on Mrs. Kershaw's statements to Dr. Pai that she had seen mold in her apartment, and

on pictures of the apartment which she showed him when she was seeking treatment. He concluded that there was "a reasonable veracity" to her assertion that she had been exposed to mold, and explained that it is generally known that mold exposure can aggravate respiratory symptoms in patients with COPD. Dr. Pai could not, however, isolate the effect of the mold exposure from the effect of other potential triggers.

The Kershaws filed a civil action against the entities that own Highland Lakes, raising claims of private nuisance, breach of the implied warranty of habitability, and breach of the covenant of quiet enjoyment, and alleging that the defendants had failed to remediate the mold and dust in the apartment and that they experienced injury and damages as a result. The defendants filed a motion to exclude Dr. Pai as an expert witness, arguing that his testimony did not meet the requirements of OCGA § 24-7-702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (113 SCt 2786, 125 LE2d 469) (1993). The defendants also filed a motion for summary judgment, arguing that the Kershaws had failed to present the medical expert testimony necessary to establish that any negligence by the defendants caused their injuries. Without ruling on the motion to exclude Dr. Pai's testimony, the trial court granted the defendants' motion for summary judgment, finding that "Dr. Pai's conclusions that mold and dust exacerbated Mrs. Kershaw's COPD are speculative, unsupported by his clinical

observations, and therefore do not rise to the required level of 'reasonable probability.'"[1] The Kershaws then filed this appeal.

On appeal, the Kershaws argue that Dr. Pai's testimony satisfied the requirement for expert testimony as to causation in this case. They acknowledge that Dr. Pai did not run any tests to confirm Mrs. Kershaw had been exposed to mold but contend that his failure to do so does not mean that his opinion lacks a scientific basis. Instead, they assert, the lack of testing is merely a factor the jury may consider when evaluating the weight to afford his opinion.

> Causation is an essential element of nuisance, trespass, and negligence claims. To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.

(Punctuation omitted). *Lore v. Suwanee Creek Homeowners Assn.*, 305 Ga. App. 165, 172 (2) (699 SE2d 332) (2010). "The diagnosis and potential continuance of a disease or other medical condition are medical questions to be established by physicians as

---

[1] The trial court also found that the Kershaws had failed to present any evidence of property damage due to the mold. The Kershaws do not challenge this finding on appeal.

6

expert witnesses and not by lay persons. Thus, we have required expert medical testimony, based at least on reasonable probability, to establish a causal link between exposure to a substance and a medical condition." (Citation omitted.) *Seymour Elec. & Air Conditioning Svc., Inc. v. Statom*, 309 Ga. App. 677, 680 (710 SE2d 874) (2011). Where, as here, the case involves a "specialized medical" question, expert testimony is required to establish causation. Id. at 679-680.

OCGA § 24-7-702 ("Rule 702") governs the admissibility of expert testimony and requires that the trial court act as "gatekeeper to ensure the relevance and reliability of expert testimony." (Citation and punctuation omitted.) *Scapa Dryer Fabrics, Inc. v. Knight*, 299 Ga. 286, 289 (788 SE2d 421) (2016) (addressing expert testimony under former OCGA § 24-9-67.1). OCGA § 24-7-702 (b) provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

"Though *Daubert* involved scientific experts, the Supreme Court has since made it clear that the strictures of Rule 702 and *Daubert* apply with equal force to non-scientific expert witnesses." (Citation omitted.) *Smith v. CSX Transp., Inc.*, 343 Ga. App. 508, 511-512 (1) (b) (806 SE2d 890) (2017). Accordingly, a medical doctor's opinion regarding causation falls within OCGA § 24-7-702 and must satisfy *Daubert*. Id. at 512.

To establish the admissibility of expert testimony under Rule 702, the trial court, as gatekeeper, must consider: (a) the qualifications of the expert; (b) the reliability of the testimony; and (c) the relevance of the testimony. *Scapa Dryer Fabrics, Inc.*, 299 Ga. at 289. Thus, Rule 702 "imposes a special obligation upon the trial judge" to act as "gatekeeper." *Scapa Dryer Fabrics, Inc.*, 299 Ga. at 289 (citing *Kumho Tire Co. v. Carmichael*, 526 U. S. 137, 147 (II) (A) (119 SCt 1167, 143 LE2d 238) (1999)); see also *Dubois v. Brantley*, 297 Ga. 575, 585(2) (775 SE2d 512) (2015).

> [W]hen a party offers expert testimony and the opposing party raises a *Daubert* challenge, the trial court must make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. . . . *Daubert* requires the trial court to act as a gatekeeper to insure that

8

speculative and unreliable opinions do not reach the jury. As a gatekeeper the court *must* do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

(Citations and punctuation omitted; emphasis supplied.) *McClain v. Metabolife Intl., Inc.*, 401 F3d 1233, 1237 (II) (11th Cir. 2005).[2] We will not disturb a trial court's determination of whether an expert is qualified – and thus the testimony is admissible – absent a manifest abuse of discretion. *HNTB Ga., Inc. v. Hamilton–King*, 287 Ga. 641, 642 (1) (697 SE2d 770) (2010). "A trial court, however, abuses its discretion by failing to act as a gatekeeper." *McClain*, 401 F3d at 1238 (II).

Here, the defendant moved to exclude the expert's testimony under *Daubert*. The trial court did not rule on the motion, but instead evaluated whether the expert's

[2] Because our new Evidence Code is modeled after the federal rules, in interpreting Georgia's new Evidence Code, we may "look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit." *Chrysler Group, LLC v. Walden*, 303 Ga. 358, 361 (II) (A) (812 SE2d 244) (2018); see also OCGA § 24-7-702 (f). If the provisions at issue were "carried over from our old Evidence Code, and when courts consider the meaning of those provisions, they may rely on Georgia decisions under the old Code." (Citations omitted.) *Chrysler Group, LLC*, 303 Ga. at 361 (II) (A).

9

testimony established causation and granted summary judgment to the defendants based on that ground. In doing so, the trial court failed to act in its role as gatekeeper.

Moreover, the trial court's order, which addresses the expert's testimony in a single sentence, shows that the trial court considered only whether the testimony established a question of fact on causation. There is no mention or discussion of the expert's qualifications, the reliability of his testimony, or the relevance of the testimony. See *Scape Dryer Fabrics, Inc.*, 299 Ga. at 289. Thus, the order does not enable us to evaluate whether the trial court considered the admissibility of the expert's testimony under OCGA § 24-7-702.[3] Because this is a role for the trial court, and our review is limited to determining whether the trial court abused its discretion, we conclude that we must vacate the trial court's order and remand for the trial court to conduct a proper *Daubert* analysis. See *Lavelle v. Laboratory Corp. of America*, 327 Ga. App. 142, 147 (2) (755 SE2d 595) (2014) ("While the trial court was not required to make specific findings of fact relating to these statutory requirements

---

[3] We are mindful that we generally presume that the trial court performed its duties, *Byelick v. Michel Herbelin USA, Inc.*, 275 Ga. 505, 507 (3) (570 SE2d 307) (2002), but where the trial court did not rule on the pending motion to exclude, did not mention the admissibility of the expert's testimony, and explicitly stated that it was considering the motion for summary judgment, we cannot say with certainty that the trial court conducted the proper *Daubert* analysis.

[under Rule 702], the trial court's rulings did not adequately demonstrate that the trial court performed its role as gatekeeper . . . . For this reason, we vacate the ruling excluding [the expert's] opinion and remand the case" for the trial court to fulfill its role as gatekeeper.) (citations and punctuation omitted).

*Judgment vacated and case remanded with instruction. Rickman, J. concurs. McFadden, P. J.,dissents.*

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2.**

# In the Court of Appeals of Georgia

A18A1842. KERSHAW et al. v. PRINCETON PROPERTIES MANAGEMENT, INC. et al.

MCFADDEN, Presiding Judge, dissenting.

In vacating the trial court's judgment, the majority concludes that the trial court erred by failing to perform his gatekeeping duties under OCGA § 24-7-702 ("Rule 702"). But the record does not affirmatively show this failure, so I respectfully dissent. Instead of vacating the judgment and remanding the case to the trial court, I would reach the merits of the appeal and, as detailed below, reverse the grant of summary judgment on the claims requiring proof that the exacerbation of Mrs. Kershaw's medical condition was caused by the presence of mold or dust in the apartment.

1. *Rule 702 ruling.*

2

As the majority notes, the trial court was required to decide whether Dr. Vosudeh Pai's opinion testimony was admissible under Rule 702 before deciding whether that testimony was evidence of medical causation sufficient to preclude summary judgment. See generally *Williams v. Mast Biosurgery USA*, 644 F3d 1312, 1317-1318 (II) (A) (11th Cir. 2011) ("when a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony, and it must comply with the requirements of Rule 702 and the strictures of *Daubert*"). The majority opinion rests on a determination that the trial court did not fulfill this requirement, and therefore erred. But the record does not support this determination.

A "trial court is presumed to know the law and presumed to faithfully and lawfully perform his or her duties. We will not presume the trial court committed error where that fact does not affirmatively appear in the record." *Johnson v. Equicredit Corp.*, 238 Ga. App. 380 (1) (517 SE2d 353) (1999) (citations omitted). This rule applies to the question of whether a trial court performed its role as gatekeeper over the admission of expert testimony. See *Lavelle v. Laboratory Corp. of America*, 327 Ga. App. 142, 147 (2) (755 SE2d 595) (2014).

3

In this case, "[t]here is nothing in the record establishing a failure of the trial court to consider the [admissibility of Dr. Pai's testimony on medical causation], and under the principle that a trial court will be presumed to have performed [his] duty we [should] not assume the trial court here failed to do so." *Byelick v. Michel Herbelin USA*, 275 Ga. 505, 507 (3) (570 SE2d 307) (2002) (citations omitted). While the trial court did not expressly rule on the defendants' motion to exclude Dr. Pai's opinion testimony, we may infer from the record as a whole that the trial court considered the admissibility of the testimony in the course of ruling on the summary judgment motion. Throughout the course of the litigation below, the defendants argued to the trial court that he would have to act as a gatekeeper in connection with the medical causation evidence. The defendants argued this point first in their motion to dismiss the action, which the trial court denied. They then argued the point in their motion to exclude Dr. Pai's testimony, and they reiterated the argument in support of their motion for summary judgment. As the defendants made clear in their brief supporting their summary judgment motion, the trial court would not need to reach their argument that Dr. Pai's opinion failed to establish causation if the trial court determined that the opinion was inadmissible under Rule 702. The fact that the trial court *did* reach this causation argument indicates that the trial court considered, and

4

rejected, the defendants' assertion that *Daubert* required the exclusion of Dr. Pai's testimony regarding a causal link between exposure to mold and the exacerbation of a respiratory condition. This would not be a remarkable conclusion on the part of the trial court. *Daubert*'s role is to "ensur[e] that the courtroom door remains closed to junk science[; it] is not served by excluding testimony . . . that is supported by extensive relevant experience, and . . . exclusion is rarely justified in cases involving medical experts." *Cartledge v. Montano*, 325 Ga. App. 322, 328 (1) (750 SE2d 772) (2013) (citation and punctuation omitted).

Simply put, nothing in the trial court's summary judgment order is inconsistent with the presumption that the trial court performed his duties under Rule 702 before considering whether Dr. Pai's opinion created a genuine issue of material fact. Compare *Lavelle*, 327 Ga. App. at 145-147 (2) (record did not adequately demonstrate that trial court performed role as gatekeeper where language of trial court's written order suggested that trial court overlooked some bases for witness's expert opinion testimony in conducting *Daubert*). So I believe we may — and should — reach the question of whether the trial court erred in granting the defendants' motion for summary judgment.

2. *Summary judgment.*

Delores Kershaw does not contend that the mold and dust in the subject apartment caused her medical condition. She was diagnosed before she moved in. She contends, and elicited expert testimony showing, "with a reasonable degree of medical probability," that the mold and dust "made a meaningful contribution to her exacerbation." That is sufficient.

"It is well established that recovery may be had for aggravation of a pre-existing condition or disease." *Binns v. MARTA*, 168 Ga. App. 261, 264 (3) (308 SE2d 674) (1983) (citation omitted); see also *Scapa Dryer Fabrics, Inc. v. Knight*, 299 Ga. 286 (788 SE2d 421) (2016). Dr. Pai's expert testimony created a genuine issue of material fact as to whether Mrs. Kershaw's exposure to mold aggravated her condition. His testimony followed the roadmap provided by this court in *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154 (658 SE2d 909) (2008), and by our Supreme Court in *Scapa Dryer Fabrics, Inc. v. Knight*, supra. So the Kershaws are entitled to survive summary judgment on their claims requiring proof that the exacerbation of Mrs. Kershaw's condition was caused by the presence of mold or dust in the apartment.[1]

---

[1] I find no error with the grant of summary judgment to the defendants on the claims for property damage and for breach of the covenant of quiet enjoyment.

Under *Allstate* "we have required expert medical testimony, 'based at least on reasonable probability,' to establish a causal link between exposure to a substance and a medical condition." 290 Ga. App. at 160 (3) (b) (citation omitted). Under *Scapa* that evidence is required to show that the exposure "made a meaningful contribution" to the exacerbation of the condition. 299 Ga. at 291 (emphasis omitted). Accordingly, the Kershaw's expert, Dr. Pai, opined with a reasonable degree of medical probability that Mrs. Kershaw's exposure to mold or dust in her apartment meaningfully contributed to the exacerbation of that medical condition. His opinion therefore established the required "causal link between exposure to a substance and a medical condition." *Allstate*, supra (citation omitted).

At issue before us is the basis for Dr. Pai's opinion. In the summary judgment order the trial court held that Dr. Pai's opinion was not evidence of the necessary causal link because it was "speculative [and] unsupported by his clinical observations." These criticisms go to the weight and credibility of Dr. Pai's testimony and should be addressed by the factfinder. See *Cartledge v. Montano*, 325 Ga. App. 322, 328 (1) (750 SE2d 772) (2013)[2] ("the credibility of the expert and the weight to

---

[2] See generally *Evans v. Dept. of Transp.*, 331 Ga. App. 313, 318 (2) n. 2 (771 SE2d 20) (2015) (cases decided under former Evidence Code remain useful to analysis of expert testimony and speculation).

7

be given to his opinion [are] matters to be addressed by the jury") (citations and punctuation omitted). Our Supreme Court corrected a similar error in *Layfield v. Dept. of Transp.*, 280 Ga. 848 (632 SE2d 135) (2006). Reversing a ruling by this court that a defendant was entitled to summary judgment because the plaintiff's expert witness lacked sufficient information to reach a probative opinion, the Court held in *Layfield* that, even if an

> expert's opinion was based upon inadequate knowledge, this does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion. If it be developed that the opinion is based on inadequate knowledge, this goes to the credibility of the witness rather than to the admissibility of the evidence. The weight given to expert testimony in negligence cases is for the trier of fact who can, but is not required to give it controlling influence.

Id. at 851 (1) (citations and punctuation omitted). Unless an expert's opinion is wholly speculative, "[a]ny objection to the speculation of [that] opinion goes to the testimony's weight, not its admissibility." *DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 451 (5) (b) (662 SE2d 141) (2008) (citation omitted). Accord *Layfield*, supra.

Dr. Pai's opinion was not wholly speculative. As Mrs. Kershaw's treating physician he was personally familiar with her medical history and condition and he

8

received information from her regarding her exposure to mold in her apartment. And he was permitted to give an expert opinion based on Mrs. Kershaw's report that there was mold in her apartment, even though this fact was not in his personal knowledge. See *Leonard v. State*, 269 Ga. 867, 870 (3) (506 SE2d 853) (1998) (expert may give opinion based on his own examination or observation or "upon any state of facts, supported by some evidence in the case, which he assumes as true") (citation, punctuation, and emphasis omitted). "[W]here evidence in the case allows a reasonable inference to be drawn by the expert witness, the expert may render an opinion for the jury to weigh." *Cartledge*, 325 Ga. App. at 327-328 (1) (citation and punctuation omitted).

Dr. Pai opined that, to a reasonable degree of medical probability, Mrs. Kershaw's exposure to mold or dust meaningfully contributed to the exacerbation of her condition. His opinion satisfied the requirements of *Scapa*, supra, and *Allstate*, supra. At this stage of the proceedings Dr. Pai's testimony must be "treated with indulgence," even if it ultimately does not persuade a jury. *Layfield*, 280 Ga. at 850 (1). Given that testimony, we should reverse the grant of summary judgment on the claims that mold or dust in the apartment exacerbated Mrs. Kershaw's medical condition.

9