McFADDEN, Judge.
Scapa Dryer Fabrics, Inc., appeals from the judgment entered on a jury verdict finding that Scapa negligently exposed Roy Knight to a toxic substance, airborne asbestos fibers, and that this exposure was a contributing proximate cause of his development of malignant mesothelioma. Knight and his wife, Milva Knight (claiming loss of consortium), sued Scapa for negligence in product liability and premises liability actions. The Knights claimed that when Knight worked as an independent contractor doing sheet metal work at the Scapa plant in Waycross between 1967 and 1973, he was exposed to airborne asbestos fibers contained in yarn used by Scapa to weave dryer felts at the plant, and to asbestos fibers contained in pipe and boiler insulation that Scapa maintained on the premises, and that these exposures contributed to his development of mesothelioma, diagnosed in 2009.
The Knights also sued Union Carbide Corporation, claiming that Knight’s mesothelioma was caused by his exposure to asbestos which Union Carbide had sold to non-party Georgia Pacific, LLC. The *83 Knights alleged that Georgia Pacific had used the asbestos to manufacture a joint compound and that Knight was exposed to the asbestos during drywall installation at his house between 1973 and 1975.
During the trial on these claims, the jury considered evidence that Knight was also exposed during his life to asbestos fibers contained in multiple other products and considered whether 29 additional non-party entities associated with these products were at fault for Knight’s development of mesothelioma, as provided in OCGA § 51-12-33 (c). The jury found that Knight’s mesothelioma was proximately caused in part by the negligence of defendants Scapa and Union Carbide, and in part by the negligence of non-party Georgia Pacific. Pursuant to OCGA § 51-12-33 (c), the jury assessed percentages of fault as follows: 40 percent to Scapa; 40 percent to Union Carbide; and 20 percent to Georgia Pacific. Based on the jury verdict assessing 40 percent of the fault to Scapa, the trial court entered judgment against Scapa in the amount of $4,187,068.95.
On appeal, Scapa challenges the sufficiency of the evidence supporting the jury’s verdict of liability, the scientific reliability of an expert witness’ testimony, the lack of a hearing prior to the admission of that expert testimony, the jury’s failure to allocate fault to other non-parties submitted on the verdict form, and certain jury charge decisions and evidentiary rulings by the trial court. However, there was sufficient evidence to support the verdict, the expert witness’ testimony was scientifically reliable, a hearing as to the admissibility of the testimony was not mandatory, the jury was not required to allocate fault to others, and there has been no showing of both harm and error as to any jury charge or evidentiary rulings. Accordingly, we affirm.
1. Sufficiency of the evidence.
Scapa contends that the trial court erred in denying its motion for a directed verdict as to liability because there is no evidence showing that Knight was exposed to asbestos while he worked at the Scapa plant or that Scapa had superior knowledge of the risk. The contention is without merit.
There is a presumption in favor of the validity of verdicts. Therefore, after the rendition of a verdict, every presumption, inference, and all evidence must be construed most favorably toward upholding the verdict. Neither a directed verdict nor a j.n.o.v. can be granted where there is some evidence to support the verdict. Where evidence is in conflict, the grant of such motions is error. Only when there is no evidence to support the verdict can either a directed *84 verdict or j.n.o.v. be granted, because the evidence demands a verdict contrary to that returned by the jury.
Rental Equip. Group v. MACI, LLC, 263 Ga. App. 155, 157 (1) (587 SE2d 364) (2003) (citations and punctuation omitted).
Construed in favor of the verdict, the evidence shows that Knight was diagnosed in 2009 with malignant mesothelioma, cancer of the pleural lining of the lungs; that this disease is caused by inhalation of airborne asbestos fibers; and that the disease may occur decades after exposure to asbestos. Contrary to Scapa’s contention, there was evidence that Knight was exposed to asbestos during periods from 1967 to 1973 when he worked at the Scapa plant. There was also evidence that, from 1959 through the mid 1980s, Knight was exposed to asbestos while doing work unrelated to Scapa involving multiple asbestos-containing products in sheet metal work, plumbing work, drywall work, automobile clutch and brake work, and roofing and shingling work.
As to asbestos exposure attributable to Scapa, the Knights produced evidence that, while Knight worked at the Scapa plant, he was exposed to airborne asbestos fibers from: (1) asbestos-containing yarn used by Scapa to weave dryer felts at the plant; and (2) asbestos-containing pipe and boiler insulation that he worked around when the insulation was removed. Evidence showed that, between 1967 and 1973, Knight worked at the Scapa plant on “several” or “multiple” occasions as an independent contractor. Knight was present at the Scapa plant in proximity to the weaving looms when the looms were using asbestos-containing yarn to weave dryer felts. During the weaving process, airborne asbestos fibers were scraped off the yarn, and asbestos-containing lint or dust was created in the process. There was evidence that Scapa knew or should have known about the health dangers of asbestos exposure as a result of the weaving process at its plant, but did not warn about the dangers, or take any steps to protect plant workers from the dangers, prior to 1974. Other evidence showed that insulation on piping and boilers at the Scapa plant contained asbestos. Knight worked in proximity to the piping and boiler insulation when the insulation was removed releasing airborne dust from the insulation. The evidence was sufficient to show that asbestos-containing products were used, produced, or maintained at the Scapa plant in a manner which released airborne asbestos fibers, and that Knight was at the plant in proximity to those asbestos fibers when they were released.
Having reviewed all the evidence, we conclude that there was sufficient evidence supporting the jury’s finding of liability and therefore “we find no error in the trial court’s denial of [Scapa’s] *85 motion for a directed verdict on liability.” Eco-Clean, Inc. v. Brown, 324 Ga. App. 523, 529 (3) (749 SE2d 4) (2013).
2. Expert testimony.
In challenging the sufficiency of the evidence, Scapa further claims that as to the issue of specific causation, the testimony of the Knights’ expert, Dr. Jerrold Abraham, is founded on junk science. Consequently, Scapa maintains that testimony is inadmissible under the rule adopted for the federal courts in Daubert v. Merrell Dow Pharmaceuticals, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993), and for Georgia — in civil cases only — by statute. See former OCGA § 24-9-67.1 (applicable at the time oftrial); current OCGA § 24-7-702.[1] The claim is without merit.
In addition to proof that Knight was negligently exposed by Scapa to asbestos, the Knights were required to prove that these exposures caused his mesothelioma. Tort cases alleging negligent exposure to a toxic substance involve two types of causation. First, general causation; “whether a substance is capable of causing a particular injury or condition in the general population.” Butler v. Union Carbide Corp., 310 Ga. App. 21, 25 (712 SE2d 537) (2011) (citation and punctuation omitted). Second, specific causation; “whether a substance caused a particular individual’s injury.” Id. (citation and punctuation omitted).
However, where, as here, the plaintiff has multiple exposures to asbestos involving multiple defendants, our Supreme Court has held that the plaintiff need not prove that “each individual tortfeasor’s conduct constitute[s] a ‘substantial’ contributing factor in the injury.” John Crane, Inc. v. Jones, 278 Ga. 747, 747 (604 SE2d 822) (2004). Because “Georgia law clearly contemplates differing degrees of culpability among joint tortfeasors,” a plaintiff in such a case can establish proximate cause by proving that “the individual defendant’s tortious conduct had [been] a contributing factor in bringing about the plaintiff’s damages.” Id. at 748. In so holding, the court suggested in strongly-worded dicta that a de minimis exposure is not sufficient. Id. at 750 (“the jury charge at issue would not have misled the jury into believing that it could award damages for a de minimis exposure to asbestos”). But this is not a de minimis exposure case. *86 Scapa was responsible for considerably more than de minimis exposure. As the testimony of Dr. Abraham established, the exposures for which Scapa is responsible were “substantial causes” of Knight’s mesothelioma, and the jury indeed found Scapa substantially liable in the amount of 40 percent.
Under Daubert, trial judges are assigned a gatekeeping role to “ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.” Id. at 589, 597; accord former OCGA § 24-9-67.1 (b). The burden of establishing reliability rests on the proponent of the expert opinion and must be established by a preponderance of the evidence. United States v. Frazier, 387 F3d 1244, 1260 (11th Cir. 2004); Allison v. McGhan Med. Corp., 184 F3d 1300, 1306 (11th Cir. 1999). Admission or exclusion of the expert testimony is within the “broad discretion” of the trial court. Meacham v. Franklin-Heard County Water Auth., 302 Ga. App. 69, 76 (690 SE2d 186) (2009). To test for reliability under Daubert, courts assess the validity of the expert’s methodology, not the conclusions generated, by considering several factors, none of which is necessarily dispositive — whether the method or theory relied on has been tested; whether it has been the subject of peer review; whether the theory has a known or potential error rate; and whether the theory has gained general acceptance in the scientific community. Daubert, 509 U. S. at 592-594.
The dissent adopts Scapa’s Daubert argument, claiming that in Butler, supra, 310 Ga. App. 21, “the methodology underlying [Dr. Abraham’s] ‘any exposure’ opinion (also known as the ‘no threshold’ or ‘linear non-threshold’ models for causation) was rejected as not testable, scientifically unreliable, and not the product of reliable principles and methods under OCGA § 24-9-67.1 (b).” Dr. Abraham’s offending opinion, the dissent summarizes, is that “every exposure to asbestos that Mr. Knight experienced at the Scapa plant was a contributing cause of his mesothelioma . . . [and] that, since Mr. Knight’s exposure to asbestos at the Scapa plant was more than zero, that exposure was a contributing cause of his mesothelioma.”
However, there are a number of things wrong with the dissent’s analysis. For one thing, our decision in Butler affirmed a trial court’s exercise of his discretion. The dissent acknowledges this fact, but passes over its significance. “The issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the trial court, and consequently, the trial court’s ruling thereon cannot be reversed absent an abuse of discretion.” Carter v. Smith, 294 Ga. App. 590, 591 (1) (669 SE2d 425) (2008) (punctuation and footnote omitted). Here, the dissent would have us reverse the trial court’s appropriate exercise of that discretion.
*87 More particularly, as noted above, Butler was a de minimis exposure case. The defendant in that case had been responsible for less than one percent of Butler’s cumulative asbestos exposure and had exposed him to the less potent form of asbestos. Butler, supra, 310 Ga. App. at 22. The excluded opinion in that case was, “To the extent that the patient was exposed to any of these products, they contributed in a cumulative fashion to his total asbestos dose, which is what caused his mesothelioma.” Butler, supra, 310 Ga. App. at 23 (punctuation omitted).
Unlike Butler, however, this is a substantial exposure case. Dr. Abraham’s opinion about the exposure at issue in this case was offered in response to a hypothetical that corresponds to the facts set out above in Division 1, detailing Knight’s asbestos exposure attributable to Scapa. The Knights’ counsel posed the following hypothetical questions to the expert witness:
Q. And I want you to assume for these hypotheticals that Roy Knight was employed at times between 1967 and 1972 doing sheet metal work in a textile mill making textiles with asbestos-containing yarn. Okay?
A. All right.
Q. And I want you to assume that during some of the times, but not all of them, that Roy Knight was at the textile mill that there were weaving operations going on. Okay?
A. Okay.
Q. And I want you to assume that at least on two separate occasions Mr. Knight disturbed thick settled dust in the textile mill that was gray in color which he associated with the yarns being used in the mill. Okay?
A. All right.
Q. And I want you to further assume that at other times in the textile mill using asbestos, that Mr. Knight observed screens in which there was white dust present.
A. Okay.
Q. And finally that. . . Mr. Knight inhaled some of the dust that was present during his work at this textile mill. Do you have an opinion given that. . . set of hypothetical facts to a reasonable degree of medical certainty as to whether those exposures would be a cause of his mesothelioma?
At that point, Scapa’s counsel interposed a lack-of-foundation objection. There followed a colloquy that consumes thirteen pages of transcript, at the end of which the objection was overruled. After the Knights’ counsel restated the hypothetical and Scapa’s renewed *88 objection was overruled, Dr. Abraham testified, “those exposures [for which Scapa was responsible] would have been substantial causes for [Knight’s] mesothelioma.”
Consequently the Butler issue involving de minimis exposure was irrelevant to the claim against Scapa. To the extent the Butler issue arose in this case, it was resolved when the jury found not liable the 29 entities associated with Knight’s other exposures to asbestos.
It is true that Dr. Abraham also opined:
I haven’t seen any evidence that there is a safe threshold for risk of mesothelioma. So ... if someone has a level of exposure to asbestos above the ambient amount in their lives, that increases their risk. I mean obviously if you have a trivial exposure, your risk is much lower than if you had a heavy exposure. But if you’re the one person that gets the disease from a trivial exposure, it’s still asbestos related.
However, saying there is no known safe threshold is very different from saying there is no safe threshold.[2] Moreover Dr. Abraham’s opinion that there is no known safe threshold is not controversial. Scapa’s expert, Dr. Victor Roggli, agreed: “each and every exposure that an individual with mesothelioma experiences in excess of background level is a substantial contributing factor in the development of the disease.”
And while Dr. Abraham’s testimony about threshold levels bears some similarities to the testimony at issue in Butler, it is not the same. Butler involved a claim against an entity responsible for less than one percent of the plaintiff’s exposure. Here Scapa has been held 40 percent responsible.
It is by no means clear, moreover, that what Dr. Abraham means by “trivial” is equivalent to the de minimis sort of exposure at issue in Butler, or to what the dissent dismisses as an “any exposure” opinion. As an example of trivial exposure, Dr. Abraham offered “someone doing laundry of someone who brought home asbestos on their work clothes.”
Furthermore, instead of mirroring the opinion of the expert disqualified in Butler, Dr. Abraham recognized the logical difficulties with that sort of opinion. Obviously experiments that involve exposing human subjects to precisely measured amounts of asbestos are *89 out of the question. The significance of asbestos exposure is generally analyzed in terms of the risk it creates, but once a person has contracted the disease it is difficult to speak sensibly of increased or decreased risk of becoming ill. Consequently as to the relationship between change in exposure and change in risk, “it’s very hard to measure small levels.”
Moreover the “methodology” underlying Dr. Abraham’s opinion — by which we understand the dissent to refer to his reasoning — is unexceptionable. The expert opinion in question — that, if a hypothetical patient has had one “trivial” exposure to asbestos and no other exposure, but nevertheless contracts mesothelioma, that trivial exposure would be the cause of the disease — was founded on his underlying opinion that asbestos is the only known cause of mesothelioma. Again, that underlying opinion is not controversial; Scapa’s expert, Dr. Roggli, agreed. Dr. Abraham’s stated basis for that underlying opinion is that, while “there is some dispute on this in the literature,” Dr. Abraham’s experience had been that “when they are appropriately analyzed [by way of ‘lung fiber burden analysis,’ that analysis] will nearly always show evidence that the person did indeed have asbestos exposure above the background population.”
Consequently even as to the opinion about a hypothetical issue, Dr. Abraham’s methodology is founded on scientific investigation and is therefore sufficient under Daubert. And in any case, that opinion is not central to his further opinion that the exposure for which Scapa is responsible was a substantial cause of Knight’s injury. Accordingly, the trial court did not err in admitting Dr. Abraham’s expert testimony, and his opinion that Scapa is responsible for a substantial cause of that injury is more than sufficient under Georgia law. John Crane, supra, 278 Ga. 747.
3. No hearing before admitting expert testimony.
Scapa contends that it is entitled to a new trial because the trial court did not conduct a hearing before admitting Dr. Abraham’s expert testimony under former OCGA § 24-9-67.1. However, as Scapa acknowledges, such a hearing is not always required. Former *90 Cartledge v. Montano, 325 Ga. App. 322, 330 (3) (750 SE2d 772) (2013) (citations and punctuation omitted; emphasis in original).
*89 OCGA § 24-9-67.1(d)provides: “[u]ponmotionofaparty,the court may hold a pretrial hearing to determine whether the witness qualifies as an expert and whether the expert’s testimony satisfies the requirements of subsections (a) and (b) of this Code section.” And in construing the language of a statute, the word “ ‘shall’ ordinarily denotes command and not permission, whereas ‘may’ ordinarily denotes permission and not command.” Thus, we cannot conclude that the trial court was required to conduct a hearing on this issue.
*90 4. Allocation of fault.
Scapa complains that a new trial is required because the jury was mandated by the evidence to allocate fault to other non-parties. The claim is without merit. Scapa had “a burden to establish a rational basis for apportioning fault to a nonparty” and whether it “met that burden given the trial evidence presented [was a matter] for the jury to determine.” Double View Ventures v. Polite, 326 Ga. App. 555, 562 (1) (757 SE2d 172) (2014) (citations omitted). It was the “jury’s prerogative to accept or reject, in whole or in part, the evidence submittedf.]” Montgomery v. Barrow, 286 Ga. 896, 899 (1) (692 SE2d 351) (2010). This enumeration provides no basis for reversal.
5. Strict liability jury charge.
Since there was no claim based on strict liability, we agree with Scapa that the trial court erred to the extent the jury charge included instructions related to a claim of strict liability. However, even assuming error, a review of the charge as a whole reveals that any such error was harmless. “[I]t is well established that jury instructions must be read and considered as a whole in determining whether the charge contained error.” West v. Breast Care Specialists, LLC, 290 Ga.App. 521, 522 (1) (659 SE2d895) (2008) (citation and punctuation omitted).
As an initial matter, it bears noting that the term “strict liability” was never used in the jury charge. The lone objectionable charge identified by the appellant in its brief was the instruction that “[i]f after balancing the risk and utility of the product you find... that the product suffered from a design defect, then the Plaintiff is entitled to recover.” However, this charge was given as part of the court’s full and accurate instructions on the law of negligence and the negligence-based product liability claims in the case. The court properly charged the jury on negligence, and there is nothing in the record to indicate that the jury may have based its verdict on an improper strict liability theory of recovery. Compare Goldsmith v. Peterson, 307 Ga. App. 26, 30 (2) (703 SE2d 694) (2010). Accordingly, any error was harmless. Foskey v. Foskey, 257 Ga. 736 (2) (363 SE2d 547) (1988) (error in charge not prejudicial if “it appears from the entire record that the error is harmless”) (citations and punctuation omitted).
6. Punitive damages.
Contrary to Scapa’s argument, the trial court did not err in submitting the claim for punitive damages to the jury because there *91 was some evidence to support such a claim.
If a tort is committed through mistake, ignorance, or mere negligence, the damages are limited to the actual injury received, for vindictive or punitive damages are recoverable only when a defendant acts maliciously, wilfully, or with a wanton disregard of the rights of others. It is not essential to a recovery for punitive damages that the person inflicting the damages was guilty of wilful and intentional misconduct. It is sufficient that the act be done under such circumstances as evinces an entire want of care and a conscious indifference to the consequences.
Roseberry v. Brooks, 218 Ga. App. 202, 210 (4) (461 SE2d 262) (1995) (citations and punctuation omitted). Here, there was evidence from which the jury could have found an entire want of care and conscious indifference to the consequences by Scapa.
7. Omitted jury charges.
Scapa cites Wingo v. Harrison, 268 Ga. App. 156, 159 (601 SE2d 507) (2004) for the proposition that the trial court erred in failing to charge the jury that “Scapa had no duty to inspect materials on its premises.” Scapa’s reliance on Wingo is misplaced. As an initial matter, that case did not involve any issues concerning jury charges. It did state the legal principle that ordinary diligence may not require an inspection of premises where the owner does not have knowledge of the defect. Id. at 160. But in the instant case, the evidence showed that Scapa had knowledge of the defect — asbestos — on its premises, and thus a charge on that legal principle was not required.
Likewise, Scapa mistakenly cites Dalton v. 933 Peachtree, L.P., 291 Ga. App. 123, 127 (661 SE2d 156) (2008), as support for its claim that the trial court should have charged the jury “that when part of the premises is surrendered to a contractor, the owner has no liability for injuries arising from the contractor’s work.” Again, that case did not involve any jury instructions. Moreover, Scapa misstates the law set forth in Dalton, which actually recites the legal principle that a property owner who surrenders possession and control of its property to an independent contractor generally is not liable for injuries sustained by the contractor’s employees. Id. at 127-128 (1). This surrender of control principle “is based in OCGA §§ 51-2-4 and 51-2-5 (5), which provide that an employer — for instance, a property owner hiring a builder — is not responsible for torts of its independent contractor unless the employer retains control over the contractor’s work.” England v. Beers Constr. Co., 224 Ga. App. 44, 47 (2) (479 SE2d 420) (1996). Here, Scapa was not being sued for the alleged torts of *92 any independent contractor, and instead was being sued by Knight himself for Scapa’s own alleged negligence regarding asbestos on its premises. Id.
In reviewing a trial court’s failure to give a jury instruction, “we must look to the jury charge as a whole, and if the jury charge as a whole accurately and fully apprised the jury of the law to be applied in its deliberations, then the refusal to give an additional instruction, even if that additional instruction were accurate, does not amount to error.” Burdette v. McDowell, 321 Ga. App. 507, 509 (2) (739 SE2d 28) (2013) (citation and punctuation omitted). Scapa has made no showing that the trial court’s jury charge as a whole did not fully and accurately apprise the jury of the applicable law, or that the failure to give the requested charges was error.
8. Admission of exhibit.
The trial court did not err in admitting Plaintiff’s Exhibit 44, an internal 1977 Scapa memorandum relating to Scapa’s switch to production of non-asbestos felts.
[T]he admission of evidence is within the sound discretion of the trial court and appellate courts will not interfere absent abuse of that discretion____[E] vidence having a tendency to establish facts at issue is relevant and admissible, and no matter how slight the probative value, our law favors admission of relevant evidence.
Hand v. South Georgia Urology Center, 332 Ga. App. 148 (1) (769 SE2d 814) (2015). Exhibit 44 was relevant to multiple issues in the case, including the existence of the asbestos hazard and Knight’s exposure to it. Accordingly, the trial court did not abuse its discretion in admitting the document into evidence.
9. Opening statement.
Scapa contends that the trial court erred in denying its motion for a mistrial after the Knights’ attorney stated during his opening argument that Scapa had “employed a lot of people and exposed a lot of people, including Mr. Knight, to asbestos.” However,
[t]he decision to grant a mistrial rests within the sound discretion of the trial court, and we will not disturb that court’s ruling absent manifest abuse. Moreover, unless it is apparent that a mistrial was essential to the preservation of the right to a fair trial, the discretion of the trial judge will not be interfered with.
*93 Mon Ami Intl., Inc. v. Gale, 264 Ga. App. 739, 744 (4) (592 SE2d 83) (2003) (citations and punctuation omitted). Here, Scapa has not shown that a mistrial was essential to preservation of the right to a fair trial, and we therefore will not interfere with the trial court’s exercise of its discretion.
10. Questioning of Scapa representative.
Scapa claims the trial court erred by overruling its objections to questions posed by the Knights’ counsel to a Scapa representative. A 1975 industrial hygiene report from Scapa’s Waycross plant, admitted into evidence as Plaintiffs’ Exhibit 46, made a recommendation that Scapa ensure employees not wear asbestos-contaminated clothing home from work, and that Scapa accomplish this by providing work clothes, shower facilities, and change rooms. The Knights’ counsel questioned a Scapa representative as to whether, prior to 1975, Scapa made any effort to take these protective measures. Scapa’s counsel objected to the question on the basis that Knight was not a Scapa employee and this is “not a take-home case.” The trial court did not err by overruling the objection. Moreover, the trial court did not err by allowing the Knights’ counsel, over Scapa’s objection, to question the same Scapa representative about whether, prior to 1974, Scapa could point to actions it took to protect workers or others coming into the plant from exposure to asbestos. These matters were relevant to issues of the existence and exposure to asbestos, and Scapa’s knowledge, and thus the trial court did not abuse its discretion in allowing such questioning by counsel. See Hand, supra (evidence having a tendency to establish facts at issue is relevant and admissible).
11. Knight’s testimony.
Scapa’s claim that Knight improperly referred to the yarn at Scapa as “asbestos yarn” because it was not within his personal knowledge has not been preserved for review because after the testimony, the trial court gave curative instructions to which Scapa raised no objection. If Scapa was dissatisfied with the trial court’s curative action, it should have renewed its objection or moved for a mistrial, “and not having done so, the assignment of error is without merit. [Cit.]” Kendrick v. Kendrick, 218 Ga. 460, 463 (4) (128 SE2d 496) (1962). And even if the issue had not been waived, any error was harmless given other evidence cited above in Division 1 showing the use of yarn containing asbestos at Scapa.
12. Limiting testimony of expert.
Even presuming that Scapa is correct in claiming that the trial court should have permitted its expert to opine about and quantify background asbestos levels, Scapa has failed to show any harm from the exclusion of such testimony. See Williams v. State, 328 Ga. App. *94 876, 880 (1) (763 SE2d 261) (2014) (appellant must show harm as well as error in trial court’s evidentiary ruling).

Judgment affirmed.

Barnes, P. J., concurs. Doyle, P. J., Boggs and Ray, JJ., concur fully inDivisions 1 and 3-12 and in judgment only in Division 2. Andrews, P. J., and Branch, J., dissent.

 Former OCGA § 24-9-67.1 was replaced by OCGA § 24-7-702, which applies to any motion made or hearing or trial commenced on or after January 1,2013. The proceedings in this case took place in 2010 and are controlled by former OCGA § 24-9-67.1. Although the former statute controls in this case, the new rule set forth in OCGA § 24-7-702 makes no significant changes to the former statute and continues application of the standards in Daubert and progeny for the admission of expert testimony in civil cases.

 For that reason and because it is apparently undisputed that the relevant exposure is cumulative exposure over a lifetime, we question the soundness of the Butler court’s analysis. The outcome in Butler would be better justified by a legal analysis of proximate cause than by a scientific analysis of cause in fact.