Markle, Judge.
Mr. and Mrs. James and Delores Kershaw, plaintiffs in the civil action below, appeal from the trial court's grant of summary judgment to the defendants. The Kershaws argue that the trial court erred in finding that they failed to submit sufficient expert medical evidence to establish that negligence by the defendants caused the Kershaws' injuries. Because we conclude that the trial court must exercise its role as gatekeeper to determine the admissibility of expert testimony under OCGA § 24-7-702 and Daubert v. Merrell Dow Pharmaceuticals , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and the trial court did not do so in this case, we vacate the trial court's order and remand the case for further proceedings.
"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." OCGA § 9-11-56 (c). Our review of a trial court's ruling on a motion for summary judgment is de novo, and we review the evidence, and all reasonable inferences, in the light most favorable to the nonmovant. See Green v. Raw Deal, Inc. , 290 Ga.App. 464, 465, 659 S.E.2d 856 (2008).
*670 So viewed, the evidence shows that Mr. and Mrs. Kershaw rented an apartment in the Highland Lakes Apartments complex from May 2012 to June 2015. Mrs. Kershaw was diagnosed with COPD in November 2011, and the Kershaws believe that mold in the apartment exacerbated Mrs. Kershaw's condition. As evidence of mold in the apartment, the Kershaws testified that they noticed rust-like stains on the air conditioner vents and moisture damage near the water heater, and the stains and moisture reappeared after cleaning. The apartment also smelled bad, and the Kershaws sometimes burned incense to cover the smell. In addition, the Kershaws hired Healthy Air to perform a mold test and the test showed that the apartment had very high toxic mold levels.
As evidence of her medical condition, Mrs. Kershaw testified that she never needed medication for breathing issues until she lived in Highland Lakes. Even after she moved out of the apartment, Mrs. Kershaw continued to experience a weakened immune system. Prednisone and Z-Packs help her symptoms and her doctors have told her that mold exposure can cause health issues. Mr. Kershaw testified that his health was also affected by the mold at Highland Lakes. He has experienced a loss of memory, chronic phlegm in his throat, an overactive bladder, and headaches.
Dr. Vosudeh Pai, Mrs. Kershaw's treating physician, testified in a deposition as an expert witness for the Kershaws. He stated that, as a general principle, mold exposure can exacerbate respiratory symptoms and pulmonary conditions. Dr. Pai did not order any lab testing to determine if Mrs. Kershaw had been exposed to an unsafe level of mold, or to determine if she is allergic to any type of mold. He acknowledged that mold spores are present in "background levels" in outdoor air, and he could not identify how much greater exposure Mrs. Kershaw had by virtue of the indoor air compared to the outdoor air. Dr. Pai also acknowledged that inhalation of incense smoke could aggravate Mrs. Kershaw's condition.
Dr. Pai explained that COPD is a progressive condition that causes breathing difficulties and wheezing. In his view, Mrs. Kershaw's condition was caused by her years of cigarette smoking and was "[d]efinitely not" caused by mold exposure. Dr. Pai looked through medical records of Mrs. Kershaw's visits to various emergency rooms while she was renting the Highland Lakes apartment, when she presented with breathing difficulties. He testified that several of those flare ups may have been triggered by things like seasonal pollen in the air, exposure to someone who was sick, or exposure to cigarette smoke (either because she was smoking herself or because she had been near someone who was smoking). Dr. Pai further testified that several of the flare ups appeared to have been triggered during a time when Mrs. Kershaw was away from her Highland Lakes apartment. Additionally, he stated that the frequency of flare ups reported by Mrs. Kershaw were typical for a patient with COPD. Ultimately, as of Mrs. Kershaw's most recent visit in May 2017, Dr. Pai did not notice any worsening of her condition. He described her pulmonary function between 2012 to 2016 as "fairly stable." Based on medical records and clinical notes that were created contemporaneously to that time period, Mrs. Kershaw's flare ups did not appear to have become worse, more severe, or more frequent during the time she lived at Highland Lakes.
Nonetheless, Dr. Pai testified that he was able to state with a reasonable degree of medical certainty that Mrs. Kershaw's COPD was exacerbated by her exposure to mold at the Highland Lakes apartment. He explained that this opinion was based on Mrs. Kershaw's statements to Dr. Pai that she had seen mold in her apartment, and on pictures of the apartment which she showed him when she was seeking treatment. He concluded that there was "a reasonable veracity" to her assertion that she had been exposed to mold, and explained that it is generally known that mold exposure can aggravate respiratory symptoms in patients with COPD. Dr. Pai could not, however, isolate the effect of the mold exposure from the effect of other potential triggers.
The Kershaws filed a civil action against the entities that own Highland Lakes, raising claims of private nuisance, breach of the implied warranty of habitability, and breach of the covenant of quiet enjoyment, and alleging *671 that the defendants had failed to remediate the mold and dust in the apartment and that they experienced injury and damages as a result. The defendants filed a motion to exclude Dr. Pai as an expert witness, arguing that his testimony did not meet the requirements of OCGA § 24-7-702 and Daubert v. Merrell Dow Pharmaceuticals , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The defendants also filed a motion for summary judgment, arguing that the Kershaws had failed to present the medical expert testimony necessary to establish that any negligence by the defendants caused their injuries. Without ruling on the motion to exclude Dr. Pai's testimony, the trial court granted the defendants' motion for summary judgment, finding that "Dr. Pai's conclusions that mold and dust exacerbated Mrs. Kershaw's COPD are speculative, unsupported by his clinical observations, and therefore do not rise to the required level of 'reasonable probability.' "[1] The Kershaws then filed this appeal.
On appeal, the Kershaws argue that Dr. Pai's testimony satisfied the requirement for expert testimony as to causation in this case. They acknowledge that Dr. Pai did not run any tests to confirm Mrs. Kershaw had been exposed to mold but contend that his failure to do so does not mean that his opinion lacks a scientific basis. Instead, they assert, the lack of testing is merely a factor the jury may consider when evaluating the weight to afford his opinion.
Causation is an essential element of nuisance, trespass, and negligence claims. To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.
(Punctuation omitted). Lore v. Suwanee Creek Homeowners Assn. , 305 Ga.App. 165, 172 (2), 699 S.E.2d 332 (2010). "The diagnosis and potential continuance of a disease or other medical condition are medical questions to be established by physicians as expert witnesses and not by lay persons. Thus, we have required expert medical testimony, based at least on reasonable probability, to establish a causal link between exposure to a substance and a medical condition." (Citation omitted.) Seymour Elec. & Air Conditioning Svc., Inc. v. Statom , 309 Ga.App. 677, 680, 710 S.E.2d 874 (2011). Where, as here, the case involves a "specialized medical" question, expert testimony is required to establish causation. Id. at 679-680, 710 S.E.2d 874.
OCGA § 24-7-702 ("Rule 702") governs the admissibility of expert testimony and requires that the trial court act as "gatekeeper to ensure the relevance and reliability of expert testimony." (Citation and punctuation omitted.) Scapa Dryer Fabrics, Inc. v. Knight , 299 Ga. 286, 289, 788 S.E.2d 421 (2016) (addressing expert testimony under former OCGA § 24-9-67.1 ). OCGA § 24-7-702 (b) provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.
"Though Daubert involved scientific experts, the Supreme Court has since made it clear that the strictures of Rule 702 and Daubert apply with equal force to non-scientific expert witnesses." (Citation omitted.) Smith v. CSX Transp., Inc. , 343 Ga.App. 508, 511-512 (1), 806 S.E.2d 890 (2017). Accordingly, a medical doctor's opinion regarding causation falls within OCGA § 24-7-702 and must satisfy Daubert . Id. at 512, 806 S.E.2d 890.
To establish the admissibility of expert testimony under Rule 702, the trial court, as gatekeeper, must consider: (a) the *672 qualifications of the expert; (b) the reliability of the testimony; and (c) the relevance of the testimony. Scapa Dryer Fabrics, Inc. , 299 Ga. at 289, 788 S.E.2d 421. Thus, Rule 702 "imposes a special obligation upon the trial judge" to act as "gatekeeper." Scapa Dryer Fabrics, Inc. , 299 Ga. at 289, 788 S.E.2d 421 (citing Kumho Tire Co. v. Carmichael , 526 U.S. 137, 147 (II) (A), 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ); see also Dubois v. Brantley , 297 Ga. 575, 585, 775 S.E.2d 512 (2015).
[W]hen a party offers expert testimony and the opposing party raises a Daubert challenge, the trial court must make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.... Daubert requires the trial court to act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury. As a gatekeeper the court must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.
(Citations and punctuation omitted; emphasis supplied.) McClain v. Metabolife Intl., Inc. , 401 F.3d 1233, 1237 (II) (11th Cir. 2005).[2] We will not disturb a trial court's determination of whether an expert is qualified-and thus the testimony is admissible-absent a manifest abuse of discretion. HNTB Ga., Inc. v. Hamilton-King , 287 Ga. 641, 642 (1), 697 S.E.2d 770 (2010). "A trial court, however, abuses its discretion by failing to act as a gatekeeper." McClain , 401 F.3d at 1238 (II).
Here, the defendant moved to exclude the expert's testimony under Daubert . The trial court did not rule on the motion, but instead evaluated whether the expert's testimony established causation and granted summary judgment to the defendants based on that ground. In doing so, the trial court failed to act in its role as gatekeeper.
Moreover, the trial court's order, which addresses the expert's testimony in a single sentence, shows that the trial court considered only whether the testimony established a question of fact on causation. There is no mention or discussion of the expert's qualifications, the reliability of his testimony, or the relevance of the testimony. See Scapa Dryer Fabrics, Inc. , 299 Ga. at 289, 788 S.E.2d 421. Thus, the order does not enable us to evaluate whether the trial court considered the admissibility of the expert's testimony under OCGA § 24-7-702.[3] Because this is a role for the trial court, and our review is limited to determining whether the trial court abused its discretion, we conclude that we must vacate the trial court's order and remand for the trial court to conduct a proper Daubert analysis. See Lavelle v. Laboratory Corp. of America , 327 Ga.App. 142, 147 (2), 755 S.E.2d 595 (2014) ("While the trial court was not required to make specific findings of fact relating to these statutory requirements [under Rule 702], the trial court's rulings did not adequately demonstrate that the trial court performed its role as gatekeeper.... For this reason, we vacate the ruling excluding [the expert's] opinion and remand the case" for the trial court to fulfill its role as gatekeeper.) (citations and punctuation omitted).
Judgment vacated and case remanded with instruction.
Rickman, J. concurs. McFadden, P. J., dissents.
*673 * THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2.

The trial court also found that the Kershaws had failed to present any evidence of property damage due to the mold. The Kershaws do not challenge this finding on appeal.

Because our new Evidence Code is modeled after the federal rules, in interpreting Georgia's new Evidence Code, we may "look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit." Chrysler Group, LLC v. Walden , 303 Ga. 358, 361 (II) (A) 812 S.E.2d 244 (2018) ; see also OCGA § 24-7-702 (f). If the provisions at issue were "carried over from our old Evidence Code, and when courts consider the meaning of those provisions, they may rely on Georgia decisions under the old Code." (Citations omitted.) Chrysler Group, LLC , 303 Ga. at 361 (II) (A), 812 S.E.2d 244.

We are mindful that we generally presume that the trial court performed its duties, Byelick v. Michel Herbelin USA, Inc. , 275 Ga. 505, 507 (3), 570 S.E.2d 307 (2002), but where the trial court did not rule on the pending motion to exclude, did not mention the admissibility of the expert's testimony, and explicitly stated that it was considering the motion for summary judgment, we cannot say with certainty that the trial court conducted the proper Daubert analysis.